UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION


**NANCY TEDESCO and JOSEPH TEDESCO, SR.**          **PLAINTIFFS**

**V.**                                    **CIVIL ACTION NO.1:06CV946 LTS-RHW**

**ALLSTATE INSURANCE COMPANY,**
**JOSEPH NORWOOD, JAMES "STUFFY" SMITH,**
**JWS, INC., ET AL.**                              **DEFENDANTS**


## MEMORANDUM OPINION

The Court has before it the plaintiffs' motion [6] to remand this case to the Circuit Court of Hancock County, Mississippi. Removal was premised on diversity of citizenship and the requisite amount in controversy under 28 U.S.C. §1332.

Plaintiffs are resident citizens of Hancock County, Mississippi. Allstate Insurance Company (Allstate) is an Illinois corporation with its principal place of business in Illinois. Two of the defendants, James Smith (Smith) and JWS, Inc. (JWS), are Mississippi citizens for purposes of ascertaining this Court's jurisdiction under 28 U.S.C. §1332. Allstate alleges that Smith and JWS have been improperly joined in this action in order to deprive Allstate of its right to have this controversy heard in a federal forum.

This is an action to recover insurance benefits for property damaged during Hurricane Katrina. Plaintiffs were the named insureds under a policy of homeowners insurance issued by Allstate (policy number 9 10 728079 02/04) for the plaintiffs' residential property situated at 4021 Ceylon Street, Bay St. Louis, Mississippi. This policy identifies JWS as the Allstate agent for the plaintiffs. This policy provides liability limits of $200,000 (Dwelling Protection), $20,000 (Other Structures Protection), and $140,000 (Personal Property Protection), and coverage for Additional Living Expenses "Up to 12 Months." Exhibits to the plaintiffs' state court complaint include the declarations page for the Allstate homeowners policy, a renewal declarations page (with certain endorsements), and a copy of the policy itself.

The Allstate homeowners policy includes a exclusion from coverage for flood damage to dwellings and other structures: *"We do not cover loss to the property described in Coverage A – Dwelling Protection or Coverage B – Other Structures Protection consisting of or caused by: 1. Flood, including, but not limited to surface water, waves, tidal water or overflow of any body of water, or spray from any of these, whether or not driven by wind."* (Allstate Policy at page 6)

The Allstate policy also includes a limitation on contents coverage: *"We will cover sudden and accidental direct physical loss to the property described in Coverage C–Personal Property Protection, except as limited or excluded in this policy, caused by: 2. Windstorm and Hail.  We do not cover: a) loss to covered property inside a building structure, caused by rain, snow, sleet, sand or dust unless the wind or hail first damages the roof or walls and the wind forces rain, snow, sleet, sand or dust through the damaged roof or wall . . ."* (Allstate Policy at page 9)

Plaintiffs were also insured under a flood insurance policy (policy number 1 80 4186938, according to the complaint), but that policy is not part of the record before me.  The limits of coverage under the flood policy have been paid.  There is a dispute concerning the extent of damage to the insured property caused by wind, a covered risk under the Allstate homeowners policy.

The key issue now before me is whether the plaintiffs have stated a cause of action against Smith and JWS, the local defendants who sold them the homeowners coverage at issue, and whether the plaintiffs' allegations of fact and their deposition testimony in support of their theory of recovery against the two Mississippi defendants are sufficient to withstand scrutiny under the summary judgment standards established by F.R.Civ.P. 56.

The plaintiffs have alleged that employees of JWS were negligent in connection with the sale of their insurance coverage.  The plaintiffs allege that these JWS employees negligently led them to believe that by purchasing the policies in question (the flood policy and the homeowners policy) they, the plaintiffs, were fully insured against any damage to the insured property that might occur during a hurricane.

On June 13, 2007, I instructed the parties to file the transcripts from the depositions of the plaintiffs and Smith.  I have now carefully read this testimony, and I find that there is evidence sufficient to support the following allegations:

1. Plaintiffs occupied the insured property approximately two years before Hurricane Katrina occurred on August 29, 2005.

2. In purchasing their insurance coverage, the plaintiffs dealt with an employee of JWS named "Christine."

3. Plaintiffs purchased builders risk insurance from JWS in January, 2003, while the insured property was under construction.

4. In June or July of 2003, at the time construction was near completion, the plaintiffs purchased flood coverage and homeowners coverage through JWS, again doing business with "Christine."

5. Homeowners coverage was quoted based on the square footage of the plaintiffs' residence.  The JWS representative told the plaintiffs that

$200,000 was the maximum available homeowners coverage on her property even though the plaintiffs' home cost more that $200,000 to build. (Nancy Tedesco Deposition Page 25, Lines 10 - 13)

6. Plaintiff Nancy Tedesco discussed the deductible provisions of the policy, and "Christine" explained that the homeowners policy had a $1,000 deductible for damage that occurred during a hurricane.

7. During this transaction, the following exchange occurred between Nancy Tedesco and "Christine":

    Q. Was there anything else you recall about that conversation with Miss Christine on that first visit where you were purchasing homeowners insurance?
    A. That's about it. Other than what did it cover. And she said it covers everything. And, you know, you have the hurricane deductible and you have a regular deductible. It covers everything.

8. During 2004 the plaintiffs increased their flood coverage.

9. At the time the plaintiffs increased their flood coverage in 2004, Nancy Tedesco had a conversation with another JWS employee named "Dottie."

10. Referring to her conversation with "Dottie," Nancy Tedesco stated: "And then I asked her, does it cover everything? And she said, yes." (Nancy Tedesco Deposition at page 14, lines 19 - 21)

11. Neither Joseph Tedesco nor Nancy Tedesco ever saw a copy of her homeowners insurance policy. (Nancy Tedesco Deposition page 17, lines 6 -8)

12. Nancy Tedesco made a specific inquiry to the JWS representatives with whom she dealt asking "if the homeowners insurance contract would provide sufficient coverage in the event of a hurricane." (Nancy Tedesco Deposition Page 26, Line 23 - Page 27, Line 5)

13. Nancy Tedesco affirmed that in response to this inquiry, "Either Dottie or Christine represented to the plaintiffs that the homeowners policy would provide full coverage in the event of a hurricane." (Nancy Tedesco Deposition Page 27, Lines 9 - 16)

14. Following her conversations with the employees of JWS, it was Nancy Tedesco's understanding that "between the two policies [she] had coverage in the event of a hurricane no matter what happened to [her] home." (Nancy Tedesco Deposition, Page 27, Line 20 through Page 28, Line 22)

The question whether the plaintiffs have stated a cause of action against the local defendants (Smith and JWS) who have allegedly been misjoined to defeat diversity jurisdiction is governed by a very liberal standard.  In making this determination, I am required to give the plaintiff every benefit of the doubt; I am required to accept the allegations of the complaint as true; I am required to draw all reasonable inferences in favor of the plaintiffs' theory of recovery; and I am required to resolve all doubtful issues of law in favor of the plaintiffs.  In a case where I consider evidence outside the pleadings, I am required to follow these same standards in evaluating the plaintiffs' testimony and other evidence in the record.

Applying these very liberal standards, I have concluded that the allegations of the complaint considered along with the testimony of Joseph and Nancy Tedesco is not sufficient to state a cause of action against Smith individually nor against JWS.

The plaintiffs make no substantive allegations against Smith individually, and both plaintiffs testified that they never transacted any business directly with Smith.  The plaintiffs did not meet Smith until after the storm.

As to the claim against the insurance agency, JWS, the only conduct the plaintiffs identify in their testimony is the statement that the JWS representatives made to the effect that the plaintiffs' insurance coverage (the flood policy and the Allstate homeowners policy) would "cover everything" in the event of a hurricane.  I cannot say that this statement was objectively false.  The limits of the plaintiffs' flood insurance coverage has been paid.  Any wind damage that occurred during the storm is covered under the Allstate homeowners policy.  The JWS representatives did not make any representations concerning the terms of these two policies, and the plaintiffs are charged with knowledge of the terms of the Allstate policy despite their not having read the policy during the two years it was in effect before the storm.  Since the plaintiffs were covered by both a flood policy and a homeowners (wind damage) policy, they were fully covered for hurricane damage within the limits of coverage they purchased and subject to the terms and conditions of their policies.

The plaintiffs wisely increased their flood insurance limits before the storm, and it is undisputed that they had the maximum homeowners coverage allowed by Allstate for a home the size of the plaintiffs' dwelling.  There is nothing the representatives of JWS said, accepting the testimony of the plaintiffs on this point, that could have reasonably lead the plaintiffs to believe that their homeowners insurance policy, which contains a number of limitations and exclusions, including a flood exclusion, would not govern their right to claim policy benefits.

Having heard from the plaintiffs through their deposition testimony, I am of the opinion that based upon the undisputed facts, construed in the light most favorable to the plaintiffs, both Smith and the other JWS representatives made no actionable misrepresentations of fact concerning the coverage of these insurance policies.

Accordingly, I will enter summary judgment in favor of JWS and Smith, and I will deny the plaintiffs' motion to remand. An appropriate order will be entered.

**DECIDED** this 10th day of September, 2007.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE
